Walter R. E. Beebe *vs.* Warren M. Greene, Town Treas-
urer.

APRIL 9, 1912.

Present:   Dubois, C. J., Johnson, Parkhurst, and Sweetland, JJ.

*(1)   Contracts.   Evidence.   Damages.*

In an action for negligence, causing personal injury, testimony of plaintiff that
he bought wood, which he could have sold at a profit, but on account of the
injury, sold it at a loss, is not open to the objection that it is in proof of a
lost contract, not alleged in the declaration, and is admissible.

*(2)   Contracts.   Evidence.   Damages.*

In an action for negligence, causing personal injury, plaintiff was properly
permitted to testify that he was deprived of the opportunity in his occupa-
tion as a teamster, of carrying between two towns merchandise for which
there was a market in each town, such testimony not being open to the objec-
tion that it was speculative.

*(3)   Evidence.   Notice.   Documents.*

Rule 19 of rules of practice of the superior court provides that no paper which
is not set forth or substantially stated in the pleadings, shall be used as
evidence unless notice shall be given the opposite party at least 3 days before
the trial.

*Held*, that, where a declaration in a personal injury case averred that plaintiff
within 60 days after the accident presented to the town council a particular
account in writing of his claim and how and when and where the same was
incurred and that satisfaction had not been made within 40 days after the
presentation of said claim, the record of the town council relative to such
claim, was that of a paper substantially stated in the pleadings and was prop-
erly admitted when testified to by the town clerk.

*(4)   Highways.   Defects.   Notice.*

Gen. Laws, cap. 46, § 16, provides that a person injured shall within 60 days
give to the town notice of the time, place and cause of such injury, and if the
town shall not make just satisfaction therefor, within the time prescribed,
he shall commence his action within one year after the date of such injury.

*Held*, that a paper wherein plaintiff presented his "claim" against the town,
for injuries alleged to have been received on a highway, through a defect
therein, which set out facts as to the time, place and cause of such injury,
was a sufficient compliance with the provisions of the statute requiring
"notice."

*(5)   Highways.   Notice.   Time.*

Where an accident on a highway occurred January 13th, notice served on the
town council March 14th was served within 60 days after the accident,
within the provisions of Gen. Laws, 1909, cap. 32, § 12, providnig that

whenever time is to be reckoned from any day, such day shall not be included in such computation.

*(6)   Trial.   New Trial.   Evidence.   Witnesses.*

Where in an action for personal injury, the court inquired of a physician, a witness for defendant, if he knew certain physicians, who the court stated had testified before him in another case, and asked "would you be surprised that they said it was extremely rare, they had only known two or three cases," the conduct of the court did not constitute prejudicial error where he properly instructed the jury that he was not a witness and that they were not to attach any importance to his remarks as testimony.

*(7)   Witnesses.   Trial.*

The trial court may properly inquire of any witness expert or ordinary as to his meaning in the use of terms employed by him.

*(8)   Highways.   Notice.   Variance.*

In a personal injury case, the notice and declaration placed the defect at about 60 feet east of a gateway leading into a cemetery.   Plaintiff testified that it was twenty paces "from the east gate post leading into the cemetery to the bar way down hill to the left."   A witness for defendant testified that the distance was 62 feet; another witness for defendant stated 67.10 feet; other witnesses for plaintiff about 60 feet.

*Held*, no variance, the notice giving the information with substantial certainty.

*(9)   New Trial.   Direction of Verdict.*

A ground for a motion to direct a verdict that "the hole was impossible to have been there" is too general to be considered.

*(10)   Credibility of Witnesses.*

It is for the jury and not for the court to pass upon the credit to be given to the witnesses, and the weight of their testimony, and the court should hesitate either in removing a case from or requiring a verdict by a jury, on the ground that something, the subject of human testimony, was absolutely impossible

TRESPASS ON THE CASE for negligence.   Heard on exceptions of defendant, and overruled.

DUBOIS, C. J.   This is an action of trespass on the case for negligence brought in the Superior Court by the plaintiff, against the town treasurer of the town of Coventry, to recover damages for injuries sustained by the plaintiff through a defect in the Washington and Bowen's Hill Road, a public highway in said town.   The defect complained of is said to have consisted of a "hole, gully or washout," running

down a hill in said road for a distance of about sixty feet from the gateway leading from the road into Bowen's cemetery, and to have been located between the ruts, in the path where horses travel, and to have been caused by allowing water to run down and wash the hill in the middle of the road, instead of in the gutters at the sides thereof.    There was testimony that the defect had existed for a period of from six months to a year prior to the accident wherein the plaintiff was injured. The plaintiff's claim is that on December 25, 1909, the defect was filled, covered and concealed by snow, and that the same had drifted into the road at this point; that, by authority of the town, a road was shovelled around the edge of the snow-drift in such a manner that the ruts made in using this temporary way were about three feet to the south of the ruts existing in the road under the snow, so that the new north rut was brought over the place of the defect so covered and filled with snow; that the worked or wrought portion of the road at this point was about sixteen feet wide; that the ruts therein were about six feet apart, and that the north rut was distant about one foot from the north side of the road as wrought, and the south rut was distant about nine feet from the south side thereof; that the snow ruts were therefore respectively four and six feet away from the sides of the wrought road; that on account of the severity of the cold weather that existed from the time of the snow-storm afore-said until the thirteenth day of January, 1910, the snow in the hole or gully packed down and was frozen hard, so that teams, carts and carriages passed over the same safely; that the plaintiff drove over the same safely about January first, 1910, when on account of the snow no hole was visible; that, prior to this time, the plaintiff had not been over the road in years and was wholly ignorant of the existence of the defect; that early in the morning of January 13, 1910, the plaintiff drove over the road in an empty two-horse wagon, at which time the snow remained in the condition above re-ferred to, but that during the day the weather moderated, it grew warm and the snow softened up and melted consider-

ably; that about two o'clock in the afternoon the plaintiff returned over the road with nearly a ton of hay on his wagon, he and his hired man riding on the load, which was about ten feet from the ground, and that when they arrived at the gateway aforesaid, where the road had been shovelled around the snowdrift he drove in the snow ruts above described until he came to a point about sixty feet below said gateway, when his rear left wheel sank through the snow into said gully, a distance of "about the length of a wagon spoke," when his wagon was overturned and he was thrown from his position on the load, a distance of about ten feet to the ground, striking upon his back and hips and seriously injuring him; that as a result he was confined to his bed for about three weeks, and has never since been able to do his regular work and at the time of the trial, fifteen months after the accident he was suffering from a chronic injury at the sacro-iliac joint which so affected the nerves, leaving the spinal cord at this point that supply the lower limbs, that a portion of his body was affected with anaesthesia, the action of his legs was limited, he could not walk without a halt, could not cross his legs, could not stoop over, reflexes were impaired, entirely gone in the right knee, could not lie upon his left side without great pain and could not do his ordinary work. During all of this time since the accident he had suffered great pain and, in the opinion of his physicians, his injuries were permanent.

The case was tried before one of the justices of the Superior Court and a jury and a verdict was rendered in favor of the plaintiff, damages being assessed in the sum of $2,500. Thereupon the defendant petitioned for a new trial and as grounds therefor alleged: 1. That said verdict is contrary to law. 2. That said verdict is contrary to the evidence. 3. That said verdict is contrary to the evidence and the weight of the evidence. 4. That said verdict is contrary to the law and the evidence and the weight of the evidence. 5. That the said verdict is excessive. 6. That the jury acted in rendering said verdict through bias, passion and prejudice. This motion was heard and denied by the justice

who presided at the trial, and the defendant took an exception to said ruling and incorporated the same together with the other exceptions, taken by him during the course of the trial, in his bill of exceptions which has been duly filed, allowed and prosecuted and the case is now before us for consideration upon the validity of said exceptions.

As the evidence was conflicting concerning the cause and effect of the accident a question of fact was presented which was entirely within the province of the jury to decide. The jury found for the plaintiff and their verdict has been approved by the justice of the Superior Court who presided at the trial, who had the same opportunity for observation of the witnesses as the jury had. In the absence of evidence that the verdict was the result of bias, passion or prejudice or of some other improper motive, or that the judge erred in his approval of the verdict under the rule referred to in *Wilcox* v. *The Rhode Island Company*, 29 R. I. 292, the verdict will be sustained. There is nothing to indicate that the jury disregarded the instructions of the court which constituted the law in the case for them, and therefore the verdict cannot be said to be against the law. We cannot say that it is against the evidence or the weight thereof. Nor are the damages so large as to shock the conscience of the court. There was no evidence introduced before the trial judge, upon the motion for a new trial, tending to sustain the sixth ground thereof and the motion was properly denied. The defendant's exception to the ruling denying the said motion is therefore overruled.

The defendant also relies upon the remaining portion of his bill of exceptions founded, as he states: "*First*—Upon Evidence and Rulings thereon, as appear on pages 23–26, 179–181, 189, 190, 326–327, 362, of the transcript of evidence in said cause filed in the office of the Clerk of the Superior Court for said county by said defendant with this his bill of Exceptions, that is,—

"1. In the direct examination of the plaintiff, Walter R. E. Beebe, the plaintiff's counsel inquired in regard to the

plaintiff's money losses on certain wood and manure, as appears on pages 23–24 of the transcript of evidence, and asked the following question, 154 Q. (page 24)  'How much loss do you figure on that?' to which the defendant objected. The objection was overruled, to which ruling of the court the defendant duly excepted.  (See page 25 of the transcript of evidence.)

"2.  Continuing the direct examination of the plaintiff on the same subject, the plaintiff's counsel asked of said witness, Walter R. E. Beebe, the following question, 157 Q. (page 25) 'How much, Mr. Beebe, did you lose on that, I will ask you in money?' to which the defendant objected. The objection was overruled, to which ruling of the Court the defendant duly excepted.  (See page 26 of the transcript of evidence.)

"3.  In the direct examination of the plaintiff's witness, George B. Parker, the plaintiff's counsel attempted to show the record of the town council of Coventry in regard to a paper (afterwards offered and admitted and marked 'Plaintiff's Exhibit A'), pages 179–181, and asked the following question, 13 Q. (page 179) 'What does the record show?' to which the defendant objected.  The objection was overruled, to which ruling of the Court, the defendant duly excepted. (See page 181 of the transcript of evidence.) .

"4.  In the course of the plaintiff's case the plaintiff offered to introduce a paper marked 'Plaintiff's Exhibit A,' page 189, to which the defendant objected.  The court admitted the paper against the objection of the defendant, to which ruling of the Court the defendant duly excepted. (See page 189 of the transcript of evidence.)   (Also see page 190.)

"5.  Immediately thereafter the plaintiff offered to introduce as evidence another paper which purported to be a copy of the original claim, so-called, and which copy bore an indorsement made by Mr. Champlin, the plaintiff's counsel, which pretended to state the time and manner of presentation of the said claim to the town council, to the introduction

of which paper (afterwards marked 'Plaintiff's Exhibit B.'),
the defendant objected. The objection was overruled, to
which ruling of the court the defendant duly excepted.
(See page 190 of the transcript of evidence.)

"6. During the recross-examination of the defendant's
expert witness, Doctor Charles A. McDonald, pages 326–327,
the Court questioned the witness at some length on the
question of whether there is any movement of the sacro-
iliac joint in the ordinary man; the Court made the statement
that certain doctors had testified before him in another case
that movement was extremely rare, to which observations
and questions by the court the said defendant objected and
duly excepted. (See page 327 of the transcript of evidence.)

"*Second.* At the conclusion of the testimony the defend-
ant asked the Court to direct a verdict for the defendant on
the following grounds, 1st, that there is a material variance
between the declaration and notice and the testimony in the
location of the alleged defect; 2nd, that there was no suffi-
cient evidence of notice to the town; and 3rd, that a verdict
ought to be directed by the Court on the testimony generally
applying to the existence of such a hole, gully, or washout
at the place designated. (See page 362 of the transcript
of evidence.) This motion was denied by the court, to
which ruling of the court the defendant duly excepted. (See
page 362 of the transcript of the evidence.")

(1) The first exception arose in the manner following: The
plaintiff, in direct examination, was asked by his counsel:
"150 Q. Have you met with any money loss by reason of
this accident? A. I have. 151 Q. How much? MR.
FROST: Wouldn't it be proper to state the items? MR.
CHAMPLIN: He can after. 152 Q. About how much?
A. Must have been six or seven hundred dollars. 153 Q.
Well, now, how do you figure that? A. Well, I bought 125
cords of wood of a man called Lewell Whitman a little ways
from where I lived and I had the wood sold. I had 50 cord
of manure sold to Mr. Clarke which I could pay anyone a
dollar a cord in Providence bring a load of manure back at

Hope $5. I sold the load at a loss. I paid $3 for the wood and sold it for $2.75. I was laid up so long I had to pay $5 for manure. I hired a man to handle it and furnish the team myself. 154 Q. How much loss do you figure on that? Mr. Frost: We object to that on the ground that it isn't alleged in the declaration that he lost any contract by means of this injury. The Court: There isn't anything about any special contract. Mr. Champlin: His business was the teaming business and if he was incapacitated from doing the work it is proper to show what it amounts to. The Court: There isn't any contract. What he is trying to prove is that he bought some wood and expected to sell it for a certain price and actually sold it at a loss. Mr. Frost: It seems to us that it is objectionable. The Court: I will let you put it in. Exception taken by Mr. Frost." The court was clearly right; there was no claim of lost contract and the exception is overruled.

The defendant's second exception is based upon the testimony of the plaintiff following the first exception taken by the defendant, viz.: "155 Q. I will ask you what occasioned this loss, Mr. Beebe, in the wood, take it first? A. I wasn't able to attend to it, wasn't able to see to my business. 156 Q. And how much do you figure that you lost on this wood and manure? A. The wood was worth $6 a cord for me in the city. The manure would cost me a dollar a load and it was worth $6 back at Hope. I sold the wood for $2.75 a cord. 157 Q. How much, Mr. Beebe, did you lose on that, I will ask you in money? A. I lost—Mr. Frost: I object to that. Mr. Champlin: I am trying to find out the actual amount. The Court: I will let him answer the question. A. Lost $300. Exception taken by Mr. Frost." It appears from the foregoing testimony that the plaintiff had 125 cords of wood at or near Hope; that there was a market for the wood in Providence at $6 a cord; that he could purchase manure in Providence for $1 a cord and that there was a market for it at Hope at $6 a cord. He was a teamster and here was steady employment in carrying wood

in one direction and manure in the other without the disadvantage of drawing an empty wagon in either direction. If he was deprived of the opportunity of transporting this merchandise in consequence of the injury sustained through the negligence of the defendant, he was damaged thereby and was properly allowed to testify concerning the same. There was nothing speculative involved in the testimony. The defendant's second exception is overruled.

The third exception arose during the examination of the town clerk of the town of Coventry, who had been recalled as a witness by the plaintiff for the purpose of testifying concerning the town council's record of the plaintiff's claim for damages against the town: "12 Q. Does the record of the town council show anything in regard to that? A. Yes, sir. 13 Q. What does the record show? A. A claim for the damages from Walter R. E. Beebe on account of injury. Objected to by Mr. Frost. MR. CHAMPLIN: I had notice last Friday that was the only way. This is wholly unnecessary and we have gone to this trouble at their suggestion. MR. PARKER: There was nothing said of this kind at all. If you are going to use any records we are entitled to three days' notice and we have had no such notice. THE COURT: It is only a question of surprise and it is entirely under the discretion of the Court. You objected the other day when the officer who served it was present. You objected to a certified copy of the paper without the clerk, now you object to this paper and the clerk. Here is the original that was served on the clerk and if there is a copy made by him it isn't the original, but if it is the paper filed by the plaintiff, himself or his attorney, that is the original and the other is a copy. I don't know the name of the officer who called there. He had one paper in his hand signed by the plaintiff or his attorney and served a copy on the town clerk, that is the copy, but if both papers are signed by the plaintiff or by his attorney, the paper served on the town clerk is the original. I shall rule that now. MR. FROST: I object. THE COURT: Introduce both if you

want to. MR. CHAMPLIN: This is the actual document served upon the town clerk as I remember it. THE COURT: 'Walter R. E. Beebe by his attorney Champlin,' you have to identify your signature, I think it is admissible. I expect you have gone as far as you can by this town clerk. MR. CHAMPLIN: He is able to prove by the records of the council. THE COURT: I will allow you to read that record. Exception taken by Mr. Frost. A. 'A claim for damages from Walter R. E. Beebe on account of injuries alleged to have been caused by a defective highway was presented and referred to the town solicitor and the road surveyor with instructions to investigate it and report.' 14 Q. That was under what date? A. Monday, March 14, A. D. 1910." The defendant urges that the court ought not to have allowed the record of the town council of Coventry, in regard to the claim of the plaintiff, to have been read because no notice had been given to the defendant under the provisions of Rule 19 of Rules of Practice of the Superior Court. The rule provides *inter alia* that "No paper which is not set forth or substantially stated in the pleadings, . . . shall be used by either party as evidence before the jury, unless notice of the same . . . shall be given to the opposite party at least three days before the trial. . . .," &c. But the plaintiff's declaration contains the following allegation: "And the plaintiff further avers that within sixty days after the happening of the aforesaid accident he duly presented to the town council of the town of Coventry a particular account in writing of his claim and damages and demand, and how and when and where the 'same was incurred, and further that just and due satisfaction has not been made to him by said town of Coventry for his said injuries and damage within forty days after the presentation of his said claim." We are of the opinion that the record was of a paper substantially stated in the pleadings and that the exception is without merit and is therefore overruled.

(4)   The defendant's fourth exception has relation to the admission as evidence of notice to the town under Gen. Laws, 1909, cap. 46, Sec. 16, which reads as follows: "A person so

injured or damaged shall, within sixty days thereafter, give to the town by law obliged to keep such highway, causeway, or bridge in repair, notice of the time, place, and cause of such injury or damage; and if the said town shall not make just and due satisfaction therefor, within the time prescribed by section twelve of this chapter, he shall, within one year after the date of such injury or damage, commence his action against the town treasurer for the recovery of the same, and not thereafter;" of plaintiff's Exhibit "A," which reads as follows: "To the Honorable Town Council of the Town of Coventry. Walter R. E. Beebe, of the town of Coventry, respectfully presents his claim against the town of Coventry for damages received by him by reason of a defect in the public highway, known as the Washington and Bowen's Hill Road and says:—that he was travelling along said Washington and Bowen's Hill Road, a public highway in said town of Coventry, on the 13th day of January, A. D. 1910, with a heavy wagon loaded with hay upon which he was riding, and when he was at a point on said road about 60 feet east, or on the down hill side of a certain gateway leading into the Bowen Cemetery, so-called, at about 2 o'clock p. m., on the date aforesaid, said wagon was, by reason of a defect in said highway, overthrown and he was precipitated from said load of hay to the ground and severely injured. Said defect consisted of a hole, depression or gully in the said highway at the point aforesaid about two feet deep, which said defect had existed for a long time previous to the aforesaid date, but of the existence of which the said Walter R. E. Beebe had no knowledge. And at the time of the happening of the aforesaid accident the said Walter R. E. Beebe was in the exercise of due care. As a result of said accident said Walter R. E. Beebe was severely injured, his wagon was broken and his horses injured, to the damage of said Walter R. E. Beebe, three thousand dollars.

"WALTER R. E. BEEBE,

"By his attorney,

"William R. Champlin.

"Dated at Coventry this
12th day of March, A. D. 1910."

Upon the back of the same appears the following return:

"Served March 14th, 1910, Lewell M. Whitman, Deputy Sheriff."

The defendant claims that this is not such a notice as is required by the statute aforesaid and was not served upon the town within sixty days according to law and argues as follows: "Exhibit A. ought not to have been admitted in evidence.

"1.   It was not the NOTICE required by statute, but was a CLAIM for damages.

"What is 'notice' required by General Laws, 1909, Chapter 46, Sec. 16?

(a)   "In this case the plaintiff presented HIS CLAIM against the town of Coventry for damages received by him by reason of a defect in the public road, known as the Washington and Bowen's Hill Road.   (See claim 'Exhibit A.')

(b)   In the declaration the plaintiff alleges 'that within sixty days after the happening of the aforesaid accident he duly presented to the town council of the town of Coventry *a particular account in writing of his claim* and damages and demand, and how and when and where the same was incurred. (See Declaration.)   Evidently the plaintiff acted under the provisions of General Laws, 1909, Chapter 46, Section 12, for the language of his claim as presented and the language of the declaration agree with the language of Section 12, and not with the provisions of Section 16.   Section 16 requires 'NOTICE' of time, place and cause of injury.   Section 16 is applicable to injuries on highways.   Section 12 to cases not for injuries received on highways.   Plaintiff acted under a misconception of the nature of his right to satisfaction.

(c)   "'Where information of a specific claim or right is given to a person it has been held that such information is operative only in respect to the particular fact communicated, and will not put the person notified upon inquiry as to any other or different right.   Thus express notice of a claim based on grounds stated in the communication operates as notice only of the specific claim mentioned, and does not put the party

notified upon inquiry as to another claim based upon different grounds, although it be the same person and relate to the same subject matter.'　21 Am. & Eng. Enc. of L. 2nd ed., 587–8.

(d)　"Notice is not synonymous with knowledge.　*Thomas* v. *City of Flint*, 81 N. W. 936, 123 Mich. 10, 47 L. R. A. 499; 5 Words and Phrases, Etc., 4842.

(e)　" Speaking of a notice to quit, Bosworth, J., said in *Congdon* v. *Brown*, 7 R. I. at page 21, 'The law requires a notice in writing.　No particular form is necessary.　It should be reasonably certain,—*Such as to appear to be a notice to quit* . . . . . . . . . . . .' "

(f)　The communication presented by the plaintiff in the case at bar does not appear to be a notice of the incurring of personal injuries on a highway for which the town may make satisfaction if they see fit, but a CLAIM for money DUE, &c., presented under and expressed in the language of a different section of the law.　THIS THEN IS NOT THE NOTICE REQUIRED BY THE STATUTE.

(g)　The giving of proper notice is a condition precedent to the maintaining of the suit.　*Batchelder* v. *White, C. T.* 28 R. I. 466.

2.　It was not proved that the notice was presented to the town council or to the clerk within the statutory time. (a)　The accident happened between 1:30 and 2 o'clock. (Ev. 278).　Witness was eating his dinner.　(Ev. 278.)

(b)　The claim got into the hands of the town council on March 14, 1911, the sixtieth day after the day of the accident. But there is no certain or creditable proof of the HOUR of service.　The burden is on the plaintiff to prove proper service.　Lewell Whitman, the deputy sheriff who served the claim, can remember nothing about the circumstances except that he afterwards went into the office of the plaintiff's attorney and the plaintiff's attorney made a note (incorrectly referred to as a return during the course of the trial) on the back of a *copy* of the claim served, and Mr. Whitman signed it.　Mr. Whitman does not remember whether the town

council was in session or not, nor to whom he handed the original claim. His memory could not properly be refreshed by a note which he did not make himself, and he ought not to testify from even a note made by himself unless on looking at the note his memory is refreshed and he is able then to testify of his own remembrance what he did on March 14, 1911, in regard to service of the claim. (c) *Computation of time of notice.* But General Laws, 1909, Chapter 46, Sec. 16, says, 'A person so injured or damaged shall within sixty days thereafter, give . . . . . . . . . notice . . . . . . . . . .' etc.

"*In Seamons* v. *Fitts,* T. T. (E. G.) 21 R. I. 237, the Court said, at bottom of page 241, 'The statute provides that the person injured shall *within sixty days thereafter* give the required notice, which means, of course, that the notice shall be given within sixty days of the occurrence of the injury or damage.'

" 'The words 'time and place' in General Statutes, 1902, Sec. 1130, requiring a description in the notice of the time and place of occurrence of the injury, means a statement of the day and hour when, and a description of the locality where, the person injured received the direct injury to his person or property from the defendant's negligent act, as nearly as these facts can be given.' *Peck* v. *Fair Haven & W. R. Co.,* 58 Atl. 757, 758, 77 Conn. 161.

"In *Taylor* v. *Peck,* T. T. (Bristol) 29 R. I. 482, 'the Court said that the purpose of requiring time to be stated is that the town may prove the plaintiff was not at the place specified at time specified.'

"The plaintiff has stated the time as about 2 p. m., Jan. 13, 1910. (See Exhibit A.)

" 'In computation of time, when the time must be computed from an act done, the day on which the act is done is to be included, especially where the computation must be from and after the doing of the act.' *Arnold* v. *United States,* 13 U. S. (9 Cranch) 104, 105, 3 L. ed. 671; 8 Words and Phrases, Etc., 6974.

"The contention of the defendant is that the claim was

served on the 61st day after the injury; that the day on which the accident occurred must be included. *Arnold* v. *United States, supra,* 8 Words and Phrases, Etc., 6974; *Seamons* v. *Fitts, T. T. supra,* at p. 241."

We see no merit in the objection and foregoing argument of the defendant. To say of the paper presented by the plaintiff to the town council (Plff's Exhibit A.) that it was not a notice but a claim, is to quibble with words; it was notice of a claim for damages for injuries alleged to have been received in one of the highways of the town through a defect therein, and contained information as to the time, place and cause of such injury or damage; such information amounts to notice. "Notice. The information given of some act done, or the interpellation by which some act is required to be done." Bouv. Law Dict. "Notice, in its legal sense, may be defined as information concerning a fact actually communicated to a party by an authorized person, . . ." &c. 29 Cyc. 1113 and cases cited. "In cases, generally, where notice is required, if notice is substantially given so that the party is fully informed, an error of description which does not mislead, may be disregarded, or may be aided by other proof," per Bosworth, J., in *Congdon* v. *Brown,* 7 R. I. at p. 21. Even if in the present case the plaintiff had erred in calling his notice a claim, as notice had been substantially given and the description did not mislead the defendant, the error may be disregarded. The notice was duly served upon the town council. The accident occurred on the thirteenth day of January, 1910, one day thereafter was January 14, 1910, and sixty days after the accident must be March 14, 1910, therefore notice served on March 14, 1910, was served within sixty days after the accident. Section 12 of Gen. Laws, 1909, cap. 32, "Of the construction of statutes," reads as follows: "Sec. 12. Whenever time is to be reckoned from any day, date, or act done, or the time of day of any act done, such day, date, or the day when such act is done, shall not be included in such computation." The hour of the accident is therefore immaterial in the computation of

the sixty days and the service was regular, as to time, if made within the period of sixty days after the day of the accident. For these reasons the defendant's fourth exception is overruled.

The defendant's fifth exception relates to the admission in evidence of what appears to be a duplicate original of the plaintiff's exhibit A. with the officer's return thereon that "In Coventry this 14th day of March, 1910, at 11–45 a. m.. I have served a true and attested copy of the within notice upon George B. Parker, Town Clerk of the Town of Coventry, Lewell M. Whitman, Deputy Sheriff." No harm was done by such admission and the defendant's fifth exception is overruled.

(6)   The defendant's sixth exception relates to the conduct of the court in questioning Dr. Charles A. McDonald, a witness. for the defendant, in the manner following: "THE COURT: What do you mean by the relaxed sacro-iliac joint, do you mean more movement than normal? WITNESS: It is. abnormal movability of the joint. THE COURT: There is. no movement ordinarily? WITNESS: A slight movement.. THE COURT: Don't all physicians say it is very rare to find any movement in the ordinary man? WITNESS: Not to-day, five years ago they said that. THE COURT: Didn't. you testify in the case of Miller v. The Rhode Island Company? WITNESS: That is Doctor William McDonald. THE COURT: Do you know Doctor Parmenter of Boston and Doctor Howard and Doctor Lovett? WITNESS: Yes. THE COURT: Would you be surprised that they said it was extremely rare, they had only known two or three cases of movement of the sacro-iliac joint? WITNESS: I should be surprised if they said it. THE COURT: It has only been about five years that there has been very much written on the subject? WITNESS: That is all. THE COURT: Do physicians say generally that only in cases of women having child-birth and sometimes in other pelvic cases you get any movement of the sacro-iliac joint? WITNESS: Yes, sir. THE COURT: Isn't that statement made? WITNESS: Yes,

very commonly by orthopaedic surgeons. THE COURT: These three surgeons testified before me. WITNESS: I am not sure they said that because they write right to the contrary. MR. FROST: It does strike me as though that isn't before this court and ought not to be before this jury. THE COURT: Object to anything you want to on the record and take any exception to the question the court has asked if you want to. Exception taken by Mr. Frost.'' The judge then said: ''The jury ought not to attach any importance to anything I said in the way of being affirmative testimony. I am not a witness and I don't want you to attach any importance to it as testimony. It was a subject which greatly interested me in that case and I had to read the testimony two or three times and I knew it was a rather interesting question among surgeons as being somewhat discussed recently.''

The portion of the above remarks most strongly objected to by the defendant are the following: ''Would you be surprised that they (Doctors Parmenter, Howard and Lovett), said it was extremely rare, they had only known two or three cases of movement of the sacro-iliac joint?'' and ''These three surgeons testified before me,'' to which question and statement the witness made the following replies, respectively: ''I should be surprised if they said it,'' and ''I am not sure they said that because they write right to the contrary.'' The danger to be apprehended, from the conduct of the court in the premises, was that the jury before whom the case was being tried, might get the impression that the judge's recollection of the testimony of these surgeons, given in another case before him, was contained in the question propounded to the witness and was evidence for them to consider in arriving at a verdict. There might have been some ground for this apprehension if the court had ignored the objection made by the defendant or had allowed the jury to form their own conclusions in the matter without giving them suitable instructions concerning the same. But the court forthwith expressly instructed the jury that he

was not a witness and was not testifying in asking the questions and in making the remarks that he did, and they were duly cautioned not to attach any importance to it as testimony.   It is very evident that the judge was trying to ascertain how positive the witness was in regard to the position that he had assumed on the question of motion in the sacro-iliac joint.

The court had a perfect right to interrogate the witness for the purpose of inquiring what he meant by the expression "relaxed sacro-iliac joint."   If a witness, expert or ordinary, ecclesiastical or lay, makes use of language that does not convey a distinct and clear meaning to the mind of the court it is fair to presume that ordinarily it will not have a clearer meaning in the minds of the jurors.   It is not only the right, but it is the duty of the judge presiding in the trial of a case to lend his aid in the elicitation of the truth from witnesses, and to see that the same is not concealed, obscured or buried in a mass of unintelligible verbiage, or in technical expressions, meaningless to a layman, when the same can be reduced to the simple terms of every-day language without detriment, and he may always inquire of an expert or other witness what he means by a certain expression he has used for the purpose of allowing the witness to clarify his meaning by the selection and use of other words.   The court, in the matter under consideration, did not exceed his discretion in the premises, and properly instructed the jury concerning the same.   The defendant's sixth exception is therefore overruled.

(8)    The last exception has reference to the refusal of the court to grant the defendant's motion, made at the conclusion of the testimony, to direct a verdict for the defendant.   The first ground is that there was a variance between the notice given to the town and the plaintiff's declaration based thereon and the proof relative thereto offered at the trial. The notice and declaration placed the defect at about sixty feet east of the gateway leading into Bowen's cemetery. The plaintiff testified that the defect was twenty paces

"from the east gate post leading into the so-called Bowen Cemetery to the bar way down hill to the left." Horatio Colvin, road surveyor of the town of Coventry, a witness for the defendant, testified in direct examination concerning this matter as follows: "45 Q. From that east line to where the entrance was to the cemetery do you know about how many feet it was down there by the road, the barway, can you tell, Mr. Witness? MR. CHAMPLIN: Does he know first. THE COURT: The question is do you know what the distance is? A. Yes. 46 Q. Approximately, what is about the distance? A. 62 feet." John W. Rathbun, a surveyor, who surveyed this portion of the road and made a plat thereof for the defendant, was called by the defendant as a witness and testified that the distance from the east abutment of the gateway of the cemetery to the west abutment of the barway as determined by him from measurements made on said plat, was "67.10 to the west abutment of the bar." Other witnesses for the plaintiff testified that the distance between the points aforesaid was about sixty feet. We find no variance between the allegation and proof. In the case of *Maloney* v. *Cook*, 21 R. I. at p. 475, Tillinghast, J., speaking for the court, used the following language: "We do not wish to be understood, by what we have said, as holding that a notice given under the statute ought to be construed with technical strictness; but that it is sufficient if it gives to the officers of the town or city 'information with substantial certainty as to the time and place of the injury, and as to the character and nature of the defect which caused it, so as to aid them in investigating the question of liability of the town.' *Spellman* v. *Chicopee*, 131 Mass. 443. See, also, *Lilly* v. *Woodstock*, 59 Conn. 219, at p. 221; *Stedman* v. *City of Rome*, 34 N. Y. Supp. 737; *Werner* v. *Rochester*, 77 Hun. 33." We are of the opinion that the notice in question gave to the officers of the town "information with substantial certainty as to the time and place of the injury, and as to the character and nature of the defect which caused it, so as to aid them in investigating the question of liability of the town."

The remaining grounds for the motion to direct a verdict for the defendant, as appears by the transcript of testimony, &c., are: "Second, that the town had no sufficient notice of the defect and, third, that the hole was impossible to have been there." We think that the third ground is too general to be considered. So many things are possible that it is difficult to accurately determine what is impossible. To determine that it was impossible for the hole to have existed in the highway under snow on January 13, 1910, at about two o'clock in the afternoon is to exclude every hypothesis in favor of its existence, and to discredit every witness who testified that it did exist. It is for the jury and not for the court to pass upon the credit to be given to the witnesses and the weight of their testimony. We should hesitate to take a case away from the jury or to compel a verdict from them, upon the ground that something, which was the subject of human testimony, was absolutely impossible. In our opinion the court wisely declined to grant the motion upon this ground. The second ground was the subject of affirmative and negative testimony; witnesses for the plaintiff testified that the defect existed and witnesses for the defendant testified that they did not see any defect, although they were looking for defects. There was therefore evidence to be submitted to the jury under suitable instructions from the court. The court did not err in declining to grant the motion and the defendant's exception, based upon said refusal is overruled.

All of the defendant's exceptions are overruled, and the case is remitted to the Superior Court in and for the County of Kent, with direction to enter judgment on the verdict.

*William R. Champlin*, for plaintiff.
*E. K. Parker, W. Louis Frost*, for defendant