[No. 13532.   Department One.   May 10, 1917.]

Tom Singer, *Respondent*, v. I. Martin *et al.*, *Appellants*.[1]

TRIAL — INSTRUCTIONS — REQUESTS.   Error cannot be predicated upon the refusal of a requested instruction which is partly bad and partly good.

CARRIERS—OF PASSENGERS—JITNEY—NEGLIGENCE—EXCESSIVE SPEED —INSTRUCTION.   In an action by a passenger in a jitney bus for injuries sustained in a collision through negligent driving and excessive speed, it is error to instruct that it is not enough without more that the excessive speed brought the jitney to the place of the collision at the moment when it took place.

SAME.   In such an action it is error to instruct that the plaintiff cannot recover unless the driver of the jitney failed to take reasonable care to avoid the other car after he saw the danger of a collision; as the doctrine of last clear chance has no application.

SAME.   In such an action, where the instruction as a whole gave to the jury the law of proximate cause as applicable to the negligence charged, appellants cannot complain because a definition of proximate cause was not given, when no request therefor was made.

SAME—PASSENGERS IN JITNEY—DEGREE OF CARE—LAW OF ROAD. Since the driver of a jitney bus owes the duty to passengers to exercise the highest degree of care compatible with the practical operation of the car, the duty is not discharged, as a matter of law, by simply observing the law of the road with reference to traveling on the right-hand side of the street.

SAME—SPEED LIMIT—REPEAL OF STATUTE—EFFECT.   Rem. & Bal. Code, § 5571, limiting the speed of automobiles in cities is more than a mere rule of evidence as to negligence and creates a duty entering into the contract of carriage of passengers in a jitney bus, so that the repeal of the act by Rem. Code, § 3562-35, does not affect rights of action theretofore existing.

SAME—PASSENGERS—SPEED LIMIT—STATUTES — INJURY TO PROPERTY.   The statute limiting the speed of automobiles in cities may be invoked by a passenger in a jitney bus, as well as by pedestrians, where violation of the statute was the proximate cause of the injury.

MUNICIPAL CORPORATIONS — STREETS — JITNEY BOND — LIABILITY— DAMAGES TO BUSINESS.   A jitney bus driver's bond covers injuries to the property or business of passengers as well as to injuries to

[1]Reported in 164 Pac. 1105.

their persons, in view of Rem. Code, § 5562-38, requiring the bond to be given for the faithful compliance with the provisions of the act "and to pay all damages which may be sustained by any person injured" by reason of the driver's negligence, and § 5562-39, giving a cause of action to "every person injured . . . for all damages sustained."

DAMAGES—TO BUSINESS—PLEADING AND ISSUES—INSTRUCTIONS. In an action by a passenger in a jitney bus for personal injuries sustained in a collision, a complaint alleging injuries to plaintiff's person and expenses for nursing and medical attendance, and stating that plaintiff "has been compelled to neglect his business for over a month" is insufficient as an allegation of damages or injury to his business through the loss of profits.

DAMAGES—TO BUSINESS—PERSONAL INJURIES. In an action for personal injuries, incapacitating plaintiff from attending to his business, loss of profits in the business cannot be recovered when the business involved the investment of capital and the labor of several employees.

DAMAGES—PERSONAL INJURIES—LOSS OF SERVICES—MEASURE—INJURY TO BUSINESS. In an action for personal injuries incapacitating the plaintiff from attending to his business, which was largely dependent upon his own exertions, evidence of the magnitude of the business, and even the profits, is admissible not as an element of damages but as bearing upon the plaintiff's loss of his own services in the business because of his injury; since the diminished profits were not the measure of the damages.

Appeal from a judgment of the superior court for King county, Ronald, J., entered December 29, 1915, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained by a passenger in a jitney bus. Reversed.

*Geo. McKay* and *H. S. Noon*, for appellants.

*Willett & Oleson, Benjamin M. Levine*, and *John A. Soule*, for respondent.

ELLIS, C. J.—Action to recover damages for personal injuries. Defendant Martin owned an automobile which he operated as a jitney in the city of Seattle, the car being driven by an employee. On June 6, 1915, while plaintiff was a passenger on the car, it was proceeding east on the south

side of Pike street, when, at or near the intersection of that street and Ninth avenue, it collided with another car, driven by one Herald. As a result of the collision, plaintiff received the injuries of which he complains. The Pacific Coast Casualty Company, being surety on Martin's bond given pursuant to Laws 1915, ch. 57, p. 227 (Rem. Code, § 5562-37 *et seq.*), was made a party defendant. From a verdict and judgment in favor of the plaintiff, both defendants appeal.

The evidence was sharply conflicting as to the speed of both cars, as to whether the collision occurred immediately at, or a short distance to the east of, the intersection, and as to which of the two cars was actually driven against the other. A review of the evidence on these questions would serve no purpose. The conflict presented made them questions for the jury under proper instructions.

Appellants urge that the court erred in refusing to give certain requested instructions. Several of these were, in substance, covered by the instructions given. In others, were so combined the sound and the unsound that they could not be properly given. One of these was as follows:

"In order that an illegal rate of speed shall be actionable it must be the proximate cause of the injury; in this case I charge you that it was not an actionable wrong for the defendant to drive at a speed exceeding the legal speed, unless such excessive speed, if there was any, was the proximate cause of the injury; *it is not enough without more, that the excessive speed, if any, brought the jitney to the place of the collision at the moment of time when it took place. Before you can find a verdict against the defendants or either of them, you must further find that the driver of the jitney failed to take the care of a reasonable, prudent man to avoid the Herald car after he saw the danger of collision.*"

The first part of this request is unobjectionable and doubtless would have been given had it been proffered as a separate instruction. But when an instruction, partly good and partly bad, is offered, the court is not required to weed out and reject the bad and give the good on pain of a reversal. *Ramm*

*v. Hewitt-Lea Lumber Co.*, 49 Wash. 263, 94 Pac. 1081. The part which we have italicized is palpably bad. The excessive speed would be enough without more if it alone brought the car to the place of collision when that place was occupied by another car. The argument that, without the qualification requested, the jury might have found excessive speed at an antecedent time and in another place the proximate cause, is entirely too refined. Neither the first part of this requested instruction, nor any instruction given, was reasonably capable of such a construction. The last sentence requested is even more objectionable. It invokes one phase of the rule of last clear chance, a doctrine wholly inapplicable on the facts here as between the carrier and his passenger. This last defect appeared in several other requested instructions. So far as this instruction correctly stated the law, it was covered in general terms by the instructions given. The court's first instruction stated the nature of the action. The second enumerated the charges of negligence, namely, carelessness in operating the jitney without having it under control, unlawful and excessive speed, negligent driving against the Herald car. The third correctly defined the degree of care required of a common carrier. The fourth defined unlawful speed. The fifth charged that, if the driver of the jitney failed "in any of the particulars charged" to observe the required degree of care, defendant would be liable, regardless of any negligence on Herald's part, "if the accident would not have happened except for defendant's driver's carelessness." The sixth was as follows:

"The burden of proof is upon the plaintiff in this case to show by the greater weight of the evidence that the defendant's driver was guilty of negligence in the manner charged and that such negligence contributed to and was the proximate cause of the collision."

Taken as a whole, these instructions gave to the jury the law of proximate cause as applied to excessive speed, as well as to every charge of negligence. But appellants complain

because a definition of proximate cause was not given. The answer is that no such instruction was requested.

Another instruction offered and refused was as follows:

"If you find from a fair preponderance of the testimony that the jitney was proceeding east along the south side of Pike street, and that the Herald car was approaching from the north along Ninth avenue, the driver of the jitney had the right-of-way and it was the duty of the driver of the Herald car to keep clear of the jitney's course, and the driver of the jitney had the right to assume that the driver of the Herald car would keep out of his way till he had notice that the driver of the Herald car would not or could not keep out of his way; till he had such notice it was not negligent for the driver of the jitney to go ahead."

No statute is cited, nor was any city ordinance pleaded or proved, declaring this rule as to right-of-way. But assuming this a proper statement of the law of the road, and that the refusal of the court to so instruct might be soundly urged as error if this were an action between the owners of the respective cars, it was not error in this case. Appellant Martin, as a common carrier, owed to respondent, as his passenger, the duty of exercising the highest degree of care compatible with the practical operation of the car. That duty would not be met, as a matter of law, by a mere observance of the law of the road. His negligence, if any, as between him and his passenger, is to be measured by his duty as a common carrier, not by his duty to other users of the highway.

The law in force at the time of the accident (Laws 1905, p. 295, § 10; Rem. & Bal. Code, § 5571) limited the speed of automobiles to four miles an hour over crossings or crosswalks within the limits of any city or village when any person is upon the same; and between intersections, to twelve miles per hour in thickly settled districts, and to twenty-four miles an hour outside of such districts; by an act taking effect after the accident but before trial, that law was repealed. Laws 1915, ch. 142, p. 397, § 35 (Rem. Code, § 5562-35). In his charge, the trial court stated the permitted speed over

crossings and intersections correctly as four miles an hour, and between intersections as twenty miles an hour. No complaint, however, is made of this discrepancy. The court then instructed the jury to the effect that any person driving an automobile over an intersection faster than four miles an hour, or between intersections faster than twenty miles an hour, would be guilty of negligence as a matter of law. This is assigned as error. Appellants contend that the speed regulation of the repealed statute furnished a rule of evidence merely, which could not survive, for any purpose, its repeal. Both reason and authority, however, sustain the view that the statute in force at the time created a duty entering into the contract of carriage so that the repeal could not operate retrospectively. This exact question was decided contrary to appellants' contention in *James v. Oakland Traction Co.*, 10 Cal. App. 785, 103 Pac. 1082. In that case, the injury sued for was to a passenger on one of defendant's street cars. At the time of the accident, a statute applicable to the place of the accident limited the speed of street cars to eight miles an hour. After the accident, but before the trial, the statute was amended so as to eliminate the provision as to the speed of cars. The court instructed the jury, in substance, that a speed in excess of eight miles an hour was negligence as a matter of law. Upon an appeal, the defendant contended, as contend appellants here, that the repealed provision was merely a rule of evidence which could be changed, and when changed, it ceased to apply even to existing causes of action. The appellate court refuted that view by an argument so cogent that we quote from it at some length:

"We think the criticised instruction states the law upon the subject to which it relates as it existed at the time the accident happened clearly and with accuracy, and we do not assent to the proposition that the repeal by the legislature subsequently to the happening of the accident of that portion of the section regulating the rate of speed of cars within cities had the effect of depriving the plaintiff of any rights vouchsafed to her by the statute at the time her injuries were

sustained. The action here is not founded upon the statute. In other words, there was immediately vested in plaintiff, upon receiving the injuries of which she complains, the *right* to institute an action, independently of the statute, to recover damages for such personal injuries as she might have sustained through the negligence of the defendant. The statute prescribed the measure of care, in the matter of speed, which the defendant was required to exercise in the execution of its contract with her to transport her with safety from one point to another over its lines. While it may be correct to say that the breach of the condition thus imposed upon the defendant by the legislature in the operation of its business as a common carrier would operate as a rule of evidence, since the violation of the condition would raise the presumption of negligence, the condition was nevertheless an element entering into the contract with plaintiff as important and substantial as any other essential element involved in the care with which common carriers are charged by the law in the transportation of passengers. This condition is not therefore, as appellant contends, a mere matter of procedure or a rule of evidence which, having been abrogated after a right of action had accrued and before the trial thereof, cannot be invoked or applied in such action under the rule laid down by the authorities cited. . . .

"In the case here the plaintiff's right of action was a vested right, founded in the breach of the contract of carriage between herself and the defendant, one of the substantial elements of the agreement upon the part of the latter being that, in order to insure the safe and comfortable carriage of plaintiff, the rate of speed of the car on which she took passage, when passing through the streets of a city, would not exceed the limit prescribed by the statute. In other words, the law regulating the business of the transportation of passengers by street railroad corporations subsisting at the time and place of the making of a contract of carriage and where such contract is to be performed, enters into and forms a part of it, as if such law was expressly referred to, or incorporated in its terms."

In the case of *Miller v. Union Mill Co.*, 45 Wash. 199, 88 Pac. 130, this court recognized the same principle. Miller, an employee of the mill company, had received injuries from

exposed cogs in the company's sawmill while the factory act
of 1903 was in force. After the accident, but before the
trial, the act was repealed by the factory act of 1905.
Under the act of 1903, as construed in *Hall v. West & Slade
Mill Co.*, 39 Wash. 447, 81 Pac. 915, the common law defense
of assumption of risk was not available to a master who had
failed to safeguard machinery as required by that act. Mil-
ler, having testified that he knew that the cogs were exposed
and unguarded, the trial court held, as a matter of law, that
he assumed the risk of injury from the cogs, excluded evi-
dence that they could have been advantageously guarded, and
refused to instruct that, by its failure to guard the cogs as
required by the act of 1903, the mill company was deprived
of the defense of assumption of risk. Upon appeal, this court
held that the act of 1903 abrogating the defense of assump-
tion of risk entered into the contract of employment, that the
repeal of that act did not operate retroactively nor affect
causes of action that arose prior to the repeal. See, also,
*Garneau v. Port Blakely Mill Co.*, 8 Wash. 467, 36 Pac. 463.

The further claim that the speed statute can only be in-
voked in favor of pedestrians is without merit. *Ludwigs v.
Dumas*, 72 Wash. 68, 129 Pac. 903. It imposed a positive
rule of conduct upon all drivers. It seems clear that it should
be invocable in favor of any person who can show that its
violation was the proximate cause of his injury, in the ab-
sence of contributory negligence on his part.

Respondent was permitted to testify that he was a wig-
maker and conducted a large hair goods business in a store
on one of the main streets of Seattle; that he employed eight
assistants in his establishment; that he drew business from
all over the Northwest; that his orders ran from $25 to $50
each; that, since 1912, his gross receipts had been practically
uniform every year, averaging $2,500 to $2,600 a month;
that once or twice a year he traveled over his territory per-
sonally soliciting orders, at which times he secured in advance
the services of a man from San Francisco or Chicago to take

his place in the store, but that he could not supply his place when he was injured, because he had no time to find a suitable man. He further testified that he was absent from his place of business about a month owing to the accident, during which time his wife remained in charge of the store, but his male customers would not deal with a woman; and that the time lost from his business on account of the accident was worth $1,000. Respondent's wife testified that, while her husband was away on account of the injury, the business suffered a loss of two-thirds of the general income. She kept the books of the business, and produced them in court, but this was on request of appellants themselves. From these books she testified that the amount of the orders received in June, 1915, the month respondent was absent from his business, was $968.65, while in May of the same year they amounted to $2,357.67; that the expenses were from $615 to $625 a month, and that the gross profit ranged from 100 to 200 per cent. All of this was admitted over an objection that it was beyond the complaint, tended to establish speculative damages to the business, and was, in any event, inadmissible as against the casualty company.

In his general charge, the court instructed the jury as follows:

"If you find in favor of the plaintiff, you will allow him such sum as damages as you may find from the evidence will fairly and reasonably compensate him for injuries which he has received, whether to his person or property."

Pursuant to that instruction, the court then submitted to the jury an interrogatory as follows:

"I have instructed you that if you find for the plaintiff you will allow him such sum as will fairly and reasonably compensate him for injuries to his person or to his property, one or both. . . . If you find for the plaintiff, then you will answer this interrogatory:

" 'What sum, if any do you allow plaintiff on account of injuries to his property?'

"Property injury means injuries to property separate from injuries to his person. Property means clothing, business, and so forth. So that if you allow the plaintiff a verdict and if that verdict includes injuries to property, loss of business or property, you will advise the court of the amount you allow him for injuries to property by answering that interrogatory on the blank line and have it signed by your foreman."

The verdict was for $1,500, $750 of which was found for injuries to property, in answer to the interrogatory. Appellants took an exception to the above instruction, and now assign as error the rendering of any judgment for more than $750, and especially the rendering of any judgment against the casualty company in excess of that amount.

Appellants' dominant contention in this connection is that this evidence was inadmissible, especially as against the casualty company, the argument being that the statute (Laws 1915, ch. 57, p. 227; Rem. Code, § 5562-37 *et seq.*) requiring the jitney operator to give a bond was not intended to provide protection against damages other than to the bodies of persons injured by such conveyance. We find no merit in this contention. By section 2 (Id., § 5562-38), the statute requires the bond to be given "for the faithful compliance by the principal of said bond with the provisions of this act and to pay all damages which may be sustained by any person injured by reason of any careless, negligent or unlawful act on the part of said principal, his agents or employees." Section 3 (Id., § 5562-39) gives a cause of action against the principal and the surety upon the bond to "every person injured . . . for all damages sustained." This language is too plain for construction. Clearly this means that the same elements of damages for which a recovery may be had against the principal enter into and form a part of the liability against the surety, the only statutory limitation being that the recovery against the surety shall be limited to the amount of the bond.

These instructions are, however, vulnerable to two other objections. In the first place, they submitted to the jury a

question wholly outside the issue, namely, damage to business as such. In his complaint, after setting forth the character and extent of the injuries to his person, plaintiff states that he has incurred an indebtedness of $75 for nursing and medical attendance, alleges total damage to a suit of clothes, hat, and pair of eyeglasses, avers that "he has been compelled to neglect his business for over a month," and fixes his total damages at $2,200. Clearly this is not, and was not intended to be, an allegation of injury to business as such, nor, aside from the loss of the suit, hat and glasses, does it contain any allegation of injury to property. By no construction, however liberal, can the reference to neglect of business mean more than a claim of damages for loss of time or loss of personal earnings. *Lombardi v. California St. R. Co.*, 124 Cal. 311, 57 Pac. 66.

In the second place, damages to business as such, especially when measured in terms of profits, which was the only measure possible under the evidence adduced, are not recoverable in an action for personal injuries, where, as here, the business involves an investment of capital, the labor of several employees, and the time and services of the wife. This point is not argued in the briefs, but since it is fundamental and controlling upon the error assigned, a proper disposition of the case forces us to an independent investigation. It is only when the investment is insignificant and merely incidental to the performance of a plaintiff's personal service that profits may be taken as a measure of loss or considered as an element of damages in personal injury cases, and then only because they are in reality personal earnings. *Weir v. Union R. Co.*, 188 N. Y. 416, 81 N. E. 168, 11 Ann. Cas. 43; *Kronold v. New York*, 186 N. Y. 40, 78 N. E. 572; *Mahoney v. Boston Elev. R. Co.*, 221 Mass. 116, 108 N. E. 1033; *Jordan v. Cedar Rapids & M. C. R. Co.*, 124 Iowa 177, 99 N. W. 693; *Beebe v. Greene*, 34 R. I. 171, 82 Atl. 796; *Ehrgott v. Mayor etc. of New York*, 96 N. Y. 264, 48 Am. Rep. 622. The

guiding principle is nowhere better stated than in the case first above cited:

"Where the facts disclose such a preponderance of the business element over the personal equation, or such an admixture of the two that the question of personal earnings could not be safely or properly segregated from returns upon capital invested, the income or profits from a business should not be considered in determining the amount of the damages to which the plaintiff is entitled."

Measured by this principle, the instructions are obviously bad. They not only permitted the jury to find a damage to the business as such when none was pleaded, but committed the fundamental error of allowing a recovery for loss of profits in a business the profits of which were essentially produced by the capital invested and the labor of others, in addition to respondent's services, and were affected by the cost of materials and many other uncertain elements.

But it does not follow, as counsel contended in the court below and intimates here, that all of the evidence to which these instructions were directed was improperly admitted. Respondent's own testimony was plainly admissible as bearing upon the quality of his services, which were lost for a month, and as tending to throw light on his earning capacity. Manifestly the services of a man who had built up and successfully managed for years a business of the magnitude of that shown in the evidence were worth much more than what it would have cost him to secure a wigmaker merely to take his place for a month in the matter of fitting wigs. The whole business, as shown by the evidence, was largely dependent upon his own exertions. It was, therefore, competent to show the character and magnitude of the business, the capital and assistance employed, and even the profits, not indeed as elements of damage, but merely as circumstances to be considered by the jury in determining the value of respondent's loss of his own services in the business because of the injury. *Heer v. Warren-Scharf Asphalt Pav. Co.*, 118

Wis. 57, 94 N. W. 789; *Muench v. Heinemann,* 119 Wis. 441, 96 N. W. 800. In the case last above cited, the personal element was certainly not more prominent in the business than in the case here, yet the court held evidence of the character here involved admissible. Justice Winslow, speaking for the court, referring to the *Heer* case, said:

"In that case it was, in substance, held that where a man not working on a salary, but managing an established business, which is mainly dependent on his personal exertions, has been disabled, and sues to recover damages for the injury, it is competent to show the character and magnitude of the business, and to that end to show the capital and assistance employed in the business, also the quality and amount of the plaintiff's services in the business before the accident, and the amount of the profits of the business, not for the reason that such profits are in any respect elements of damage, nor that their loss or impairment can be proven because they represent interest on the capital employed, the value of the good will, and perhaps other elements, in addition to the value of the personal services of the plaintiff, but for the reason that all these elements, when known, are truly descriptive of the quality of the service of which the plaintiff was capable before his injury, and thus tend to throw light on his earning capacity."

See, also, *Ripon v. Bittel,* 30 Wis. 614; *Hart v. New Haven,* 130 Mich. 181, 89 N. W. 677; *Muskogee Elec. Traction Co. v. Eaton* (Okl.), 152 Pac. 1109; *El Paso Elec. R. Co. v. Murphy,* 49 Tex. Civ. App. 586, 109 S. W. 489.

The question of damage to business should not have been submitted to the jury. The evidence as to the character, extent and income from the business and respondent's part therein should have been submitted solely as an element in determining the reasonable value of the time lost by respondent, with an express caution that diminished profits were not to be used as a measure of damages in any sense.

The judgment is reversed, and the cause remanded for a new trial.

MOUNT, MAIN, and MORRIS, JJ., concur.